7/28/2017 2:42 PM
Chris Daniel - District Clerk Harris County
Envelope No. 18504948
By: Nelson Cuero
Filed: 7/28/2017 2:42 PM

CAUSE NO. _____

| | | |
|---|---|---|
| OSAMA ABDULLATIF | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| JETALL COMPANIES, INC.; | § | |
| ALI CHOUDHRI individually; | § | |
| BRADLEY S. PARKER, individually; | § | |
| and DWARD DARJEAN, Individually | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR TEMPORARY INJUNCTION**

Plaintiff Osama Abdullatif ("Abdullatif"), on his own behalf submits this Original Petition and Application for Temporary Restraining Order and Application for Temporary Injunction complaining of Jetall Companies, Inc. ("Jetall"), Ali Choudhri ("Choudhri"), Bradley S. Parker ("Parker"), and Dward Darjean ("Darjean," and, together with Jetall, Choudhri and Parker, the "Defendants") and states as follows:

## I.  DISCOVERY LEVEL

1.1    Plaintiff intends to conduct discovery under Level 2 and affirmatively pleads that it seeks monetary relief in excess of $1,000,000.00, including actual damages, penalties, pre-judgment interest, costs, expenses, and attorney fees as well as nonmonetary relief.

## II. PARTIES AND SERVICE

2.1    Plaintiff Osama Abdullatif ("Abdullatif") an individual who resides in Harris County, Texas. He is also a manager and member of Mokaram-Latif West Loop, L.P. ("MLWL") and Mokaram Latif General, LLC ("MLG").

2.2    Mokaram-Latif West Loop, L.P. ("MLWL") is a Texas Limited Partnership with its principal office located in Houston, Harris County, Texas.  Sentinel does not have either a

driver's license or a Social Security Number.

2.3     Mokaram Latif General, LLC ("MLG") is a Texas Limited Company with its principal office located in Houston, Harris County, Texas.  Sentinel does not have either a driver's license or a Social Security Number.

2.4     Defendant Jetall Companies, Inc. is a Texas Limited Company with its principal office located in Houston, Harris County, Texas.

2.5     Defendant Ali Choudhri ("Choudhri") is an individual who resides in Harris County, Texas.  Choudhri may be served with process wherever he may be found or as may otherwise be allowed by law.  Pursuant to Tex. Civ. Prac. & Rem. Code § 30.014, the last three numbers of this Defendant's driver's license number are unknown and the last three numbers of this Defendant's Social Security Number are unknown.

2.6     Defendant Bradley S. Parker ("Parker") is an individual who resides in Harris County, Texas.  Parker may be served with process at wherever he may be found or as may otherwise be allowed by law.  Pursuant to Tex. Civ. Prac. & Rem. Code § 30.014, the last three numbers of this Defendant's driver's license number are unknown and the last three numbers of this Defendant's Social Security Number are unknown.

2.7     Defendant Dward Darjean ("Darjean") is an individual who resides in Harris County, Texas.  Darjean may be served with process wherever he may be found or as may otherwise be allowed by law.  Pursuant to Tex. Civ. Prac. & Rem. Code § 30.014, the last three numbers of this Defendant's driver's license number are unknown and the last three numbers of this Defendant's Social Security Number are unknown.

### III. JURISDICTION AND VENUE

3.1     This Court has jurisdiction over this cause in that it involves an amount in

controversy in excess of the minimum jurisdictional limit.  Gov't Code §24.007(a) and (b).
Venue is proper in Harris County, Texas because (1) it is the county in which all or a substantial
part of the events or omissions giving rise to the claims herein occurred (2) the county where
Defendants' putative obligations to Plaintiffs were to be performed, and (3) the county where the
MLWL Partnership Agreement and MLG Company Agreement were negotiated, at least in part,
and where it was executed by one or more parties to said agreement.  *See* Tex. Civ. Prac. &
Rem. Code §§ 15.002(1)-(3) and §15.035(a).

## IV. Background Facts

4.1     For years, Choudhri, Ali Mokaram ("Mokaram") and Abdullatif have engaged in
litigation over Mokaram's purported transfer to Choudhri of his 49.5% interest in MLWL and
50% interest in MLWL's general partner, MLG.  MLWL and MLG were formed to purchase
and manage a parcel of property located at 2500 West Loop South (the "Property"). *See*
Affidavit of Abdullatif as Exhibit "A".

4.2     Following a two (2) week jury trial in the 190th Judicial District of Harris County,
Cause No. 2012-27197 ("Underlying Lawsuit"), the jury returned a verdict in favor of Mokaram
on the purported transfer of his interest in MLWL and MLG to Choudhri that was subsequently
overturned via judgment notwithstanding the verdict ("JNOV") by the 190th Court in the
Underlying Lawsuit.  The 190th Court entered Final Judgment dated January 13, 2016 ("Final
Judgment") wherein Choudhri was awarded $50,000 in damages against Mokaram, but more
importantly, was declared the owner of 49.5% of MLWL and 50% owner of MLWL's general
partner, MLG.

4.3     Mokaram and Abdullatif appealed and timely moved to suspend enforcement of
the Final Judgment.  On March 7, 2016, the 190th court entered an Order Setting Security to

Suspend Enforcement of Judgment ("Supersedeas Order"). In doing so, the 190th suspended enforcement the Final Judgment by requiring Mokaram and Abdullatif to post a bond or cash deposit of $62,700.25 and to abide by previous court orders placing certain restrictions on Abdullatif regarding the management of the Property.

4.4     With the Final Judgment suspended, Abdullatif remained General's sole manager and ran the Property's day-to-day affairs.   By all accounts, he did so quite successfully. However, this did not stop Choudhri from attempting to circumvent the Supersedeas Order.   On November 14, 2016, nearly eight (8) months after the entry of the Supersedeas Order, Choudhri filed a Motion for Review of Order Setting Supersedeas Bond at Zero with the Fourteenth Court of Appeals seeking to adjust the amount of the bond required to suspend enforcement of the declaratory judgment portion of the Final Judgment.   Therein, he argued that Judge Kerrigan erred when she did not require Mokaram or Abdullatif to post any bond to suspend the enforcement of the portion of the judgment declaring his ownership interest in MLWL or MLG. Surprisingly, the appellate court agreed.

4.5     In its Opinion on Motions for review of Supersedeas Order ("Opinion"), the Fourteenth Court Of Appeals ruled that Mokaram and Abdullatif were required to post a bond in an amount equal to the value of the property interests that the district court declared had been assigned to Choudhri.  However, rather than determining the amount that the bond was to be increased, the appellate court remanded the Supersedeas Order for the trial court to take evidence and make findings of fact regarding the amount and type of security Mokaram and Abdullatif must post to supersede the declaratory portion of the judgment.   Subsequently, the Fourteenth Court of Appeals opined that the Final Judgment would become enforceable twenty (20) days after issuing its Opinion if Mokaram and Abdullatif failed to post additional security *even though*

*no supersedeas order that Mokaram and Abdullatif could comply with exists.* The 190th Court set a hearing to determine additional security for August 8, 2017. Seizing on – effectively – a gap in timing required by the Texas Rules of Appellate Procedure and the reality of the 190th Court's heavy case load, Choudhri began attempting enforcement of the Final Judgment. Based on the ongoing events, Choudhri purports to be a manager and member of MLG and MLWL. This issue is contested on appeal.

4.6     MLWL is governed by a Limited Partnership Agreement dated as of April 13, 2006 (the "LPA"). The LPA is attached as Exhibit A. MLG is governed by a Company Agreement dated as of April 13, 2006 (the "LCA"). The LCA is attached as Exhibit B. Both the LPA and the LCA contain specific requirements for governance of the entities, membership, and appointment of managers.

4.7     Specifically, the LCA allows for the meeting of managers of MLG. The LCA requires that a quorum shall be present at a meeting of Mangers. A quorum is defined as a majority of the managers of MLG. See the LCA at § 6.08(a). Without a quorum, a meeting of the managers may not occur. The LCA also specifies how a manager can be removed from his position in the company. Specifically, the LCA provides that, "At any meeting of Members at which a quorum of Members present called expressly for that purpose, or pursuant to a written consent adopted pursuant to this Agreement, any Manager may be removed, with or without cause, by a Super Majority." A Super Majority is a vote of 66.67% of all members.

4.8     The LCA also allows for meetings of MLG's members. Section 8 of the LCA specifies that a quorum shall be present at all meetings. A quorum is a majority of fifty percent of the members of MLG. In order to hold a meeting of MLG's members, written notice of the meeting must be given not less than ten (10) and not more than sixty (60) days before the

meeting occurs.

4.9    Ali Choudhri admitted that Abdullatif is a manager of MLG.  In a lawsuit that he filed in the 234th Judicial District of Harris County on June 30, 2017 as Cause No. 2017-44151 entitled *Choudhri, et. al v. Abdullatif, et. al*, he plead the following:

> 39.    Plaintiff, Ali Choudhri ("Choudhri") Choudhri became a 50% owner and a manager of Mokaram-Latif General, L.L.C. ("General Partner"), the general partner of Mokaram Latif West Loop, Ltd. ("Limited Partnership"), as of October 29, 2010. Choudhri became the owner of a 49.5% interest in the Limited Partnership on that date. Defendant, Osama Abdullatif ("Abdullatif"), was the other owner and the other manager of the General Partnership as of October 29, 2010.

Choudhri makes the judicial admission that Abdullatif is a manager of MLG as of June 30, 2017.  The same pleading states that Choudhri believes that he removed Abdullatif as a manager of MLWL – an action purportedly accomplished by the members and managers of MLG:

> 40.    Abdullatif has been recently removed as a manager of the Limited Partnership, and his membership interests revoked, by action of the members and managers of the General Partner.  These actions were taking because Abdullatif had violated the terms of the General     1

4.10    On June 28, 2017, Choudhri sent an email to Abdullatif attempting to convene a meeting of MLG's managers.  Abdullatif did not attend the meeting of managers that Choudhri attempted to convene.  As Choudhri's pleading in the 234th Judicial District admits, Abdullatif was (and still is) a manager of MLG.  By operation of the 190th Court's Final Judgment, the managers of MLG as of June 28, 2017 were Choudrhi and Abdullatif.  Abdullatif's position as a manager of MLG was never altered according to the LCA.  The meeting of MLG managers that

Choudhri called did not have a quorum since a majority of the managers did not attend.  Thus, any action attempted at such a meeting is void.

4.11    Undeterred by his lack of a majority of managers to attend a meeting, on June 30, 2017, Choudhri began signing documents entitled "Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C."  The Unanimous Consent documents that Choudhri signed purported to take the following actions on the behalf of the company:

a.    Remove Abdullatif as a manager of MLG[2];

b.    Appoint Darjean as a manager of MLG[3]; and

c.    Appoint Parker as a manager.[4]

4.12    On June 30, 2017, Choudhri and Darjean also signed a document entitled "Resolution of the Managers of Mokaram-Latif General, L.L.C."[5] that purported to increase the number of managers of MLG from two to three.  On the same day, Parker, Darjean, and Choudhri all signed a document entitled "Resolution of the Managers of Mokaram-Latif General, L.L.C."[6] That document purported to effectively terminate the company's relationship with Abdullatif in its entirety, to strip Abdullatif of access to the property, to demand that he pay MLG money, to direct the company to sue Rodney Drinnon, and various other actions with respect to MLG's ownership, operation, and assets.  The net effect of Choudhri's – who is, at best, one of two managers of MLG and a fifty percent (50%) member – purported actions was to impermissibly remove Abdullatif as a manager of MLG, steal his half of the company, and seize

---

[1] A True and correct copy of Choudhri's petition in the 234th Judicial District of Harris County is attached hereto as **Exhibit A**.
[2] A True and correct copy of the purported written consent is attached hereto as **Exhibit B**.
[3] A True and correct copy of the purported written consent is attached hereto as **Exhibit C**.
[4] A True and correct copy of the purported written consent is attached hereto as **Exhibit D**.
[5] A True and correct copy of the purported resolution is attached hereto as **Exhibit E**.
[6] A True and correct copy of the purported resolution is attached hereto as **Exhibit F**.

control for himself.

4.13    Choudhri, Parker, and Darjean are currently acting as though they have properly executed the plan to seize the company and oust Abdullatif entirely.  On July 27, 2017, Parker sent a correspondence to all of the tenants of the Property stating as much:

# Mokaram Latif West Loop, Ltd.

July 27, 2017

Dear Tenants:

        Effective immediately, Osama Abdullatif and Latif & Company have been removed as building manager for the Beal Bank Building, 2500 West Loop South, Houston, Texas 77027.  The new management company is Jetall Companies, Inc.

        From this point onward, all rental payments are to be made through Jetall Companies, Inc., 2500 West Loop South, Suite 255, Houston, Texas 77027 and are to be made payable to Mokaram Latif West Loop, Ltd.  Any payments made to the prior management company, or in another other fashion than given above, will not be effective and will not be credited to the tenant.

                                        Very truly yours

                                        Bradley S. Parker, Manager
                                        Mokaram-Latif General, LLC,
                                        General Partner of Mokaram Latif West Loop, Ltd.

[7]

4.14    Choudhri's actions in this case are remarkable.  Choudhri requested a meeting of MLG's managers on twenty-four (24) hours' notice.  Abdullatif was not available to attend such meeting (and actively contests Choudhri's status as a manager *at all*).  With only one of two managers present at the purported meeting, no majority of managers was present and no quorum existed.  Thus, any action taken at the meeting of managers is void.

---

[7] A True and Correct Copy of Parker's correspondence to the tenants of the Property is attached hereto as **Exhibit G**.

4.15    More troubling, just two days after the purported meeting of managers, Choudhri signed documents purporting to be "Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C." and "Resolution of the Managers of Mokaram-Latif General, L.L.C." On June 30, 2017 (and currently), Abdullatif owned fifty percent (50%) of MLG. In order to remove a manager of MLG, a super majority of its members must vote for removal. Since Choudhri is, at best, a fifty percent (50%) owner of MLG, he could not have obtained enough votes from the membership of MLG to oust Abdullatif as a manager. Under the LCA, ouster of a manager is an action that must be undertaken at a meeting of the members, not a meeting of managers. A meeting of members requires at least ten (10) days' written notice. In this instance, there was no meeting of members called (and no quorum could have been present). Instead, Choudhri is attempting to paper over alleged removal of Abdullatif by conflating the LCA's manager meeting requirements and member meeting requirements.

4.16    Similarly, Choudhri acts as though he is sole member of MLG. While MLG's LCA includes a provision for expulsion of a member, none of the conditions precedent for expelling Abdullatif as a member have occurred. The LCA provides:

> 15.04 **Expulsion.** A Member may be expelled from the Company by unanimous vote of all other Members (not including the Member to be expelled) if that Member (a) has willfully violated any provision of this Agreement; (b) committed fraud, theft, or gross negligence against the Company or one or more Members of the Company, or (c) engaged in wrongful conduct that adversely and materially affects the business or operation of the Company. Such a Member shall be

Choudhri alleges, <u>but has not ever proved</u>, that Abdullatif triggered the expulsion provision of the LCA. As a threshold matter, expulsion for fraud, theft, gross negligence, or wrongful conduct as specified in the LCA would require a judicial finding as a condition precedent to expulsion. In this instance, no act has occurred that would allow Choudhri – a purported member at best – to expel Abdullatif. Since Choudhri cannot unilaterally expel

Abdullatif, he cannot call a meeting of the members of MLG in the first place.  He also cannot take action by unanimous written consent of the members of MLG without Abdullatif.

4.17    As discussed above, the Final Judgment purporting to award Choudhri an ownership and management interest in MLG and MLWL is currently on appeal.  The Fourteenth Court of Appeals vacated the trial court's Supersedeas Order and did not specify any bond or other means by which Abdullatif could supersede the Final Judgment pending the appeal.  The trial court set a hearing to determine the appropriate bond amount for August 8, 2017.[8]

4.18    Before the hearing in the 190th Court, Choudhri is attempting to use his purported position as a member and manager of MLG to unilaterally and illegally oust Abdullatif in such a way that will destroy his right to maintain his appeal and will destroy the business of MLWL and MLG.

## V.  CLAIMS

**Count-1:  Declaratory Judgment**: All Purported Resolutions Taken On Behalf of MLWL and MLG Are Void

5.1    Abdullatif re-alleges and incorporates by reference all allegations and facts set forth in paragraphs 1.1 through 4.21 as if specifically restated herein.

5.2    The terms of the LCA and the LPA set for the specific conditions and requirements for holding a meeting of the members or managers of the same.  To hold a meeting of the managers of MLG, the LCA requires that notice be given and that a quorum of the managers of the company be present.  At the time of Choudhri's actions, MLG had one manager: Abdullatif and purported to have a second manager, Choudhri (whose rights and position are contested on appeal).  Without Abdullatif's presence, a meeting of managers of MLG could not

---

[8] A true and correct copy of the email from the 190th District Court is attached hereto as **Exhibit H**.

be convened because a meeting of managers requires the presence of a majority of the managers. Thus, Abdullatif seeks a declaration that no meeting of managers of MLG has occurred since at least June 1, 2017.

5.3     The LCA specifies that in order to expel a member, a member must be found liable for specific act against the company as specified in the agreement.  At best, Choudhri can only support an attempted expulsion of Abdullatif under Section 15.04 of the LCA by making allegations of wrongdoing.  Such allegations fail to trigger the right of the other members of MLG to expel Abdullatif.  As a result, Abdullatif seeks a declaration that the other members of MLG cannot expel him as a member pursuant to Section 15.04 of the LCA or any other provision therein.

5.4     The LCA requires a vote of 66.67% of the members of MLG in order to remove a manager of the company.  At best, Choudhri owns fifty percent (50%) of the membership interest of MLG and cannot unilaterally remove a manager.  Abdullatif seeks a declaration that he was not removed as a manager of MLG and is still a manager of the same.

5.5     The LCA requires a quorum of a majority of the membership interests in order to hold a meeting of members.  At best, Choudhri owns fifty percent (50%) of the membership interest of MLG and cannot unilaterally constitute a quorum of the members of MLG.  Thus, Abdullatif seeks a declaration that any meeting of members held without his presence or consent did not include the necessary quorum to convene and that all actions taken at any meeting failing to convene a quorum of members are void and in violation of the LCA.

5.6     The LCA requires at least ten (10) days' written notice of a meeting of members of MLG.  Choudhri stated in his lawsuit dated June 30, 2017 that Abdullatif was removed as a manager and member of MLG and MLWL.  Choudhri first gave notice of the meeting of

managers of MLG on June 28, 2017.  Removal of a manager of MLG requires a supermajority of votes of the members at a meeting of members.  Abdullatif seeks a declaration that Choudhri could not have given at least ten (10) days' notice of a meeting of members since he first gave notice of the meeting on June 28, 2017 and alleged that Abdullatif was removed as a manager on or before June 30, 2017 and that Abdullatif was not removed as a manager of MLG.

5.7     Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C. requires unanimous written consent of the members of MLG.  Abdullatif, as a fifty percent (50%) member of MLG did not give written consent to remove himself as a manager of MLG, appoint Darjean as a manager of MLG, or appoint Parker as a manager of MLG.  Thus, Abdullatif seeks a declaration that any unanimous written consent of the members of MLG that do not bear Abdullatif's signature are void and in violation of the LCA.

5.8     Resolutions of the Managers of Mokaram-Latif General, L.L.C. must be made by a majority of the managers of MLG.  The only manager of MLG is Abdullatif.  Choudhri purports to be a manager of MLG.  There are no other managers of MLG.  Abdullatif seeks a declaration that any resolution of the managers of MLG that he has not signed is void and in violation of the LCA.

## VI. APPLICATION FOR TEMPORARY RESTRAINING ORDER

6.1     Abdullatif, re-alleges and incorporates by reference all allegations and facts set forth in paragraphs 1.1 through 5.8 as if specifically restated herein.

6.2     Abdullatif, further requests that the Court enjoin Defendants, individually and collectively, from interfering in any way with the running of MLWL and MLG's business, including but not limited to enjoining Defendants from (1) misrepresenting to third-parties, that Abdullatif is not a manager of MLG or MLWL (2) misrepresenting to third-parties, that

Abdullatif is not a member of MLG or MLWL; (3) occupying any portion of the Property without the express consent of Abdullatif; (4) interfering with the rights and obligations afforded Abdullatif as set forth in the LCA and the LPA; (5) diverting funds to themselves that belong to MLWL or MLG; (6) informing tenants of the Property that rent or other payments should be paid to any of the Defendants, their affiliates, or companies that they own or control; (6) conducting or holding any meeting of members of MLG without the express consent of Abdullatif; (7) conducting or holding any meeting of the managers of MLG without the express consent of Abdullatif; (8) issuing any resolutions of the managers of MLG without the express consent of Abdullatif; and (9) issuing any resolutions or actions on the behalf of the members of MLG without the express consent of Abdullatif ó whose membership interest is fifty percent (50%).

6.3    Unless this Court immediately orders Defendants to cease interfering with the running of MLWL and MLGs business as more fully referenced above, the status quo will not be maintained and the operations of the property and the good will created for MLWL and MLG and their respective members and managers will be damaged.  Unless this Court immediately orders the Defendants to cease interfering with the ongoing operations and corporate structure of MLWL and MLG, Abdullatifs rights to appeal the Final Judgment in the 190th court case will be irreparably destroyed.  Unless this Court orders the Defendants to immediately cease attempting to unilaterally claim ownership and control of MLWL and MLG, Abdullatifs ownership rights in the entities will be irreparably damaged.  Unless this Court orders the Defendants to immediately cease communicating with MLWL tenants while misrepresenting that they are solely in control of the entity, MLWL and MLGs ability to maintain landlord-tenant relationships with its tenants will be irreparably damaged.

6.4    Such damages will be virtually impossible to measure.  Once the landlord-tenant

relationship of MLWL and MLG and their respective tenants is gone it is virtually impossible to replace and impossible to measure. Moreover, if the Defendants are permitted to carry on with their illegal and unilateral attempt to oust Abdullatif from MLWL and MLG, it will be impossible for Abdullatif to maintain his rights on appeal.  As such, Abdullatif has no adequate remedy at law and therefore seeks and is entitled to a temporary restraining order.

## VII. APPLICATION FOR TEMPORARY INJUNCTION PENDING THE CONCLUSION OF THIS LAWSUIT

7.1     Abdullatif, re-alleges and incorporates by reference all allegations and facts set forth in paragraphs 1.1 through 6.3 as if specifically restated herein.

7.2     Abdullatif, further seeks to maintain the status quo during the pendency of this lawsuit.  The status quo in this case includes Abdullatif's continued position as a member, manager, and partner in MLWL and MLG and running of its business in accordance with the LCA, LPA, and subsequent orders from the 190th Judicial District Court.

7.3     Abdullatif, therefore further requests that the Court enjoin Defendants, individually and collectively, from interfering in any way with the running of MLWL and MLG's business, including but not limited to enjoining Defendants from(1) misrepresenting to third-parties, that Abdullatif is not a manager of MLG or MLWL (2) misrepresenting to third-parties, that Abdullatif is not a member of MLG or MLWL; (3) occupying any portion of the Property without the express consent of Abdullatif; (4) interfering with the rights and obligations afforded Abdullatif as set forth in the LCA and the LPA; (5) diverting funds to themselves that belong to MLWL or MLG; (6) informing tenants of the Property that rent or other payments should be paid to any of the Defendants, their affiliates, or companies that they own or control; (6) conducting or holding any meeting of members of MLG without the express consent of

Abdullatif; (7) conducting or holding any meeting of the managers of MLG without the express consent of Abdullatif; (8) issuing any resolutions of the managers of MLG without the express consent of Abdullatif; and (9) issuing any resolutions or actions on the behalf of the members of MLG without the express consent of Abdullatif ó whose membership interest is fifty percent (50%).

7.4    Unless this Court grants a temporary injunction pending the conclusion of this lawsuit ordering Defendants to cease interfering with MLWL and MLG's business as more fully referenced above, the status quo will not be maintained and the landlord-tenant relationship between the MLWL and MLG and its tenants and the good will created for MLWL and MLG and its members and managers will be damaged.  Such damages will be virtually impossible to measure.  Once the landlord-tenant relationship of MLWL and MLG and their respective tenants is gone it is virtually impossible to replace and impossible to measure. Moreover, if the Defendants are permitted to carry on with their illegal and unilateral attempt to oust Abdullatif from MLWL and MLG, it will be impossible for Abdullatif to maintain his rights on appeal.  As such, Abdullatif has no adequate remedy at law and therefore seeks and is entitled to a temporary injunction in order to maintain the status quo during the pendency of this lawsuit.

## VIII. CONDITIONS PRECEDENT

8.1    All conditions precedent to Plaintiff's claims for relief have been performed, have been waived or have otherwise occurred.

## PRAYER

For the foregoing reasons, Plaintiff Osama Abdullatif asks that it be awarded a judgment against Defendants and that the injunctive relief sought herein be granted as follows:

a.    Actual damages awarded to Osama Abdullatif;

b.      Exemplary Damages for Actual damages awarded to Osama Abdullatif;

c.      That the temporary restraining order and temporary injunction requested herein be

        granted;

d.      Pre-judgment and post-judgment interest;

e.      Court costs, attorney's fees, and collection costs;

f.      All other relief, at law or in equity, to which Plaintiff Osama Abdullatif is justly

        entitled.


                        Respectfully Submitted,

                        **McCathern, PLLC**

                        By: *_/s/Isaac Villarreal_*
                            **Rodney L. Drinnon**
                            Texas Bar No. 24047841
                            rdrinnon@mccathernlaw.com
                            **Isaac Villarreal**
                            Texas bar. No. 24054553
                            ivillarreal@mccathernlaw.com
                            **Nicholas Zugaro**
                            Texas Bar No. 24070905
                            nzugaro@mccathernlaw.com
                            2000 West Loop South, Suite 1850
                            Houston, TX 77027
                            Tel. (832) 533-8689
                            Fax (832) 213-4842

                        **ATTORNEYS FOR OSAMA ABDULLATIF**

7/28/2017 2:42:25 PM
Chris Daniel District Clerk
Harris County
Envelope No: 18504948
By: CUERO, NELSON
Filed: 7/28/2017 2:42:25 PM

CAUSE NO. _____

| | | |
|---|---|---|
| OSAMA ABDULLATIF | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| JETALL COMPANIES, INC.; | § | |
| ALI CHOUDHRI individually; | § | |
| BRADLEY S. PARKER, individually; | § | |
| and DWARD DARJEAN, Individually | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF OSAMA ABDULLATIF

STATE OF TEXAS

COUNTY OF HARRIS

On this day personally appeared before me Osama Abdullatif who, having been first duly

sworn, deposed and stated as follows:

1. My name is Osama Abdullatif. I am over eighteen years of age, of sound mind, and have personal knowledge of all the matters set forth in this affidavit, all of which are true. I am the authorized representative of Mokaram Latif West Loop, L.P. and Mokaram Latif General, LLC.

2. Mokaram-Latif West Loop, L.P. ("MLWL") is a Texas Limited Partnership with its principal place of business in Harris County, Texas.

3. Mokaram Latif General, LLC ("MLG") is a Texas Limited Company with its principal office in Harris County, Texas.

4. For years, Choudhri, Ali Mokaram ("Mokaram") and I have engaged in litigation over Mokaram's purported transfer to Choudhri of his 49.5% interest in MLWL and 50% interest in MLWL's general partner, MLG. MLWL and MLG were formed to purchase and manage a parcel of property located at 2500 West Loop South (the "Property").

5. Following a two (2) week jury trial in the 190th Judicial District of Harris County, Cause No. 2012-27197 ("Underlying Lawsuit"), the jury returned a verdict in favor of Mokaram on the purported transfer of his interest in MLWL and MLG to Choudhri that was subsequently overturned via judgment notwithstanding the verdict ("JNOV") by the 190th Court in the Underlying Lawsuit. The 190th Court entered Final Judgment dated January 13, 2016 ("Final Judgment") wherein Choudhri was awarded $50,000 in damages against Mokaram, but more importantly, was declared the owner of 49.5% of MLWL and 50% owner of MLWL's general partner, MLG.

Page **1** of **7**

6. Mokaram and I appealed and timely moved to suspend enforcement of the Final Judgment. On March 7, 2016, the 190th court entered an Order Setting Security to Suspend Enforcement of Judgment ("Supersedeas Order"). In doing so, the 190th suspended enforcement the Final Judgment by requiring Mokaram and I to post a bond or cash deposit of $62,700.25 and to abide by previous court orders placing certain restrictions on me regarding the management of the Property.

7. With the Final Judgment suspended, I remained MLG's sole manager and ran the Property's day-to-day affairs. I did so successfully. However, this did not stop Choudhri from attempting to circumvent the Supersedeas Order. On November 14, 2016, nearly eight (8) months after the entry of the Supersedeas Order, Choudhri filed a Motion for Review of Order Setting Supersedeas Bond at Zero with the Fourteenth Court of Appeals seeking to adjust the amount of the bond required to suspend enforcement of the declaratory judgment portion of the Final Judgment. Therein, he argued that Judge Kerrigan erred when she did not require Mokaram or I to post any bond to suspend the enforcement of the portion of the judgment declaring his ownership interest in MLWL or MLG. Surprisingly, the appellate court agreed

8. In its Opinion on Motions for review of Supersedeas Order ("Opinion"), the Fourteenth Court Of Appeals ruled that Mokaram and I were required to post a bond in an amount equal to the value of the property interests that the district court declared had been assigned to Choudhri. However, rather than determining the amount that the bond was to be increased, the appellate court remanded the Supersedeas Order for the trial court to take evidence and make findings of fact regarding the amount and type of security Mokaram and I must post to supersede the declaratory portion of the judgment. Subsequently, the Fourteenth Court of Appeals opined that the Final Judgment would become enforceable twenty (20) days after issuing its Opinion if Mokaram and I failed to post additional security *even though no supersedeas order that Mokaram and I could comply with exists*. The 190th Court set a hearing to determine additional security for August 8, 2017. Seizing on – effectively – a gap in timing required by the Texas Rules of Appellate Procedure and the reality of the 190th Court's heavy case load, Choudhri began attempting enforcement of the Final Judgment. Based on the ongoing events, Choudhri purports to be a manager and member of MLG and MLWL. This issue is contested on appeal.

9. MLWL is governed by a Limited Partnership Agreement dated as of April 13, 2006 (the "LPA"). MLG is governed by a Company Agreement dated as of April 13, 2006 (the "LCA"). Both the LPA and the LCA contain specific requirements for governance of the entities, membership, and appointment of managers.

10. Specifically, the LCA allows for the meeting of managers of MLG. The LCA requires that a quorum shall be present at a meeting of Mangers. A quorum is defined as a majority of the managers of MLG. See the LCA at § 6.08(a). Without a quorum, a meeting of the managers may not occur. The LCA also specifies how a manager can be removed from his position in the company. Specifically, the LCA provides that, "At any

meeting of Members at which a quorum of Members present called expressly for that purpose, or pursuant to a written consent adopted pursuant to this Agreement, any Manager may be removed, with or without cause, by a Super Majority." A Super Majority is a vote of 66.67% of all members.

11. The LCA also allows for meetings of MLG's members. Section 8 of the LCA specifies that a quorum shall be present at all meetings. A quorum is a majority of fifty percent of the members of MLG. In order to hold a meeting of MLG's members, written notice of the meeting must be given not less than ten (10) and not more than sixty (60) days before the meeting occurs.

12. Ali Choudhri admitted that I am a manager of MLG. In a lawsuit that he filed in the 234th Judicial District of Harris County on June 30, 2017 as Cause No. 2017-44151 entitled *Choudhri, et. al v. Abdullatif, et. al*, he plead the following:

> 39. Plaintiff, Ali Choudhri ("Choudhri") Choudhri became a 50% owner and a manager of Mokaram-Latif General, L.L.C. ("General Partner"), the general partner of Mokaram Latif West Loop, Ltd. ("Limited Partnership"), as of October 29, 2010. Choudhri also became the owner of a 49.5% interest in the Limited Partnership on that date. Defendant, Osama Abdullatif ("Abdullatif"), was the other owner and the other manager of the General Partnership as of October 29, 2010.

Choudhri makes the judicial admission that I am a manager of MLG as of June 30, 2017. The same pleading states that Choudhri believes that he removed me as a manager of MLWL – an action purportedly accomplished by the members and managers of MLG:

> 40. Abdullatif has been recently removed as a manager of the Limited Partnership, and his membership interests revoked, by action of the members and managers of the General Partner. These actions were taking because Abdullatif had violated the terms of the General

13. On June 28, 2017, Choudhri sent an email to me attempting to convene a meeting of MLG's managers. I did not attend the meeting of managers that Choudhri attempted to convene. As Choudhri's pleading in the 234th Judicial District admits, I was (and still am) a manager of MLG. By operation of the 190th Court's Final Judgment, the managers of MLG as of June 28, 2017 were purportedly Choudhri and myself. My position as a manager of MLG was never altered according to the LCA. The meeting of MLG managers that Choudhri called did not have a quorum since a majority of the managers did not attend. Thus, any action attempted at such a meeting is void.

14. Undeterred by his lack of a majority of managers to attend a meeting, on June 30, 2017, Choudhri began signing documents entitled "Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C." The Unanimous Consent documents that Choudhri signed purported to take the following actions on the behalf of the

company:

    a.    Remove me as a manager of MLG;

    b.    Appoint Darjean as a manager of MLG; and

    c.    Appoint Parker as a manager.

15. On June 30, 2017, Choudhri and Darjean also signed a document entitled "Resolution of the Managers of Mokaram-Latif General, L.L.C." that purported to increase the number of managers of MLG from two to three.  On the same day, Parker, Darjean, and Choudhri all signed a document entitled, "Resolution of the Managers of Mokaram-Latif General, L.L.C."[1] That document purported to effectively terminate the company's relationship with me in its entirety, to strip me of access to the property, to demand that I pay MLG money, to direct the company to sue Rodney Drinnon, and various other actions with respect to MLG's ownership, operation, and assets.  The net effect of Choudhri's – who is, at best, one of two managers of MLG and a fifty percent (50%) member – purported actions was to impermissibly remove me as a manager of MLG, steal my half of the company, and seize control for himself.

16. Choudhri, Parker, and Darjean are currently acting as though they have properly executed the plan to seize the company and oust me entirely.  On July 27, 2017, Parker sent a correspondence to all of the tenants of the Property stating as much:

---

[1] A True and correct copy of the purported resolution is attached hereto as **Exhibit G**.

# Mokaram Latif West Loop, Ltd.

July 27, 2017

Dear Tenants:

Effective immediately, Osama Abdullatif and Latif & Company have been removed as building manager for the Beal Bank Building, 2500 West Loop South, Houston, Texas 77027.   The new management company is Jetall Companies, Inc.

From this point onward, all rental payments are to be made through Jetall Companies, Inc., 2500 West Loop South, Suite 255, Houston, Texas 77027, and are to be made payable to Mokaram Latif West Loop, Ltd.  Any payments made to the prior management company, or in another other fashion than given above, will not be effective and will not be credited to the tenant.

Very truly yours

Bradley S. Parker, Manager
Mokaram-Latif General, LLC,
General Partner of Mokaram Latif West Loop, Ltd.

Choudhri's actions in this case are remarkable.  Choudhri requested a meeting of MLG's managers on twenty-four (24) hours' notice.  I was not available to attend such meeting (and actively contests Choudhri's status as a manager *at all*).  With only one of two managers present at the purported meeting, no majority of managers was present and no quorum existed.  Thus, any action taken at the meeting of managers is void.

17. More troubling, just two days after the purported meeting of managers, Choudhri signed documents purporting to be "Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C." and "Resolution of the Managers of Mokaram-Latif General, L.L.C." On June 30, 2017 (and currently), I owned fifty percent (50%) of MLG. In order to remove a manager of MLG, a super majority of its members must vote for removal.  Since Choudhri is, at best, a fifty percent (50%) owner of MLG, he could not have obtained enough votes from the membership of MLG to oust me as a manager. Under the LCA, ouster of a manager is an action that must be undertaken at a meeting of the members, not a meeting of managers.  A meeting of members requires at least ten (10) days' written notice. In this instance, there was no meeting of members called (and no quorum could have been present).  Instead, Choudhri is attempting to paper over alleged removal of me by conflating the LCA's manager meeting requirements and member meeting requirements.

18. Similarly, Choudhri acts as though he is sole member of MLG.  While MLG's LCA

Photocopy Copy of Chris Daniel District Clerk

includes a provision for expulsion of a member, none of the conditions precedent for expelling me as a member have occurred.  The LCA provides:

> 15.04  **Expulsion.**  A Member may be expelled from the Company by unanimous vote of all other Members (not including the Member to be expelled) if that Member (a) has willfully violated any provision of this Agreement; (b) committed fraud, theft, or gross negligence against the Company or one or more Members of the Company, or (c) engaged in wrongful conduct that adversely and materially affects the business or operation of the Company.  Such a Member shall be

Choudhri alleges, but has not ever proved, that I triggered the expulsion provision of the LCA.  As a threshold matter, expulsion for fraud, theft, gross negligence, or wrongful conduct as specified in the LCA would require a judicial finding as a condition precedent to expulsion.  In this instance, no act has occurred that would allow Choudhri ó a purported member at best ó to expel me.  Since Choudhri cannot unilaterally expel me, he cannot call a meeting of the members of MLG in the first place.  He also cannot take action by unanimous written consent of the members of MLG without me.

19.  As discussed above, the Final Judgment purporting to award Choudhri an ownership and management interest in MLG and MLWL is currently on appeal.  The Fourteenth Court of Appeals vacated the trial courtøs Supersedeas Order and did not specify any bond or other means by which I could supersede the Final Judgment pending the appeal.  The trial court set a hearing to determine the appropriate bond amount for August 8, 2017.

20.  Before the hearing in the 190th Court, Choudhri is attempting to use his purported position as a member and manager of MLG to unilaterally and illegally oust me in such a way that will destroy his right to maintain his appeal and will destroy the business of MLWL and MLG.

21.  Unless this Court immediately orders Defendants to cease interfering with the running of Sentineløs business as more fully referenced above, the status quo will not be maintained and the landlord-tenant relationships between MLWL, MLG, and its tenants and the good will created for MLWL and MLG and its members and managers will be damaged.  Such damages will be virtually impossible to measure.  My ability to maintain the appeal of the Final Judgment from the 190th Court will be irreparably harmed.

22.  Such damages will be virtually impossible to measure.  Once the landlord-tenant relationship of MLWL and MLG and their respective tenants is gone it is virtually impossible to replace and impossible to measure. Moreover, if the Defendants are permitted to carry on with their illegal and unilateral attempt to oust Abdullatif from MLWL and MLG, it will be impossible for Abdullatif to maintain his rights on appeal.  As such, Abdullatif has no adequate remedy at law and therefore seeks and is entitled to a temporary restraining order.

FURTHER THIS AFFIANT SAITH NOT.

_____
Osama Abdullatif

STATE OF TEXAS

COUNTY OF HARRIS

Subscribed and sworn to before me, the undersigned authority, by John Lutteringer on this _____ day of _____, 2017.

_____
Notary Public in the State of Texas

7/3/2017 2:32 PM
Chris Daniel - District Clerk Harris County
Envelope No. 17976099
By: Justin Kitchens
Filed: 6/30/2017 7:45 PM

## 2017-44151 / Court: 234

CAUSE NO. _____

| | | |
|---|---|---|
| **MOKARAM LATIF WEST** | § | **IN THE DISTRICT COURT** |
| **LOOP, LTD., MOKARAM-LATIF** | § | |
| **GENERAL, L.L.C. & ALI CHOUDHRI,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **OSAMA ABDULLATIF, SAFYA** | § | |
| **ABDULLATIF, DANNY M. SHEENA,** | § | |
| **JAY SHANAQ, M.D., RONNIE SHEENA,** | § | |
| **ABDULLATIF &CO, L.L.C., ASTRODOME** | § | |
| **AUTO SALES, INC., SAFYA, L.L.C.,** | § | |
| **SLS AIM, L.L.C., SLS PROPERTIES,** | § | |
| **L.L.C., SLS HOUSTON PROPERTIES,** | § | **JUDICIAL DISTRICT** |
| **L.L.C., SLS-SOUTH LOOP, L.L.C.,** | § | |
| **SLS BUILDING MANAGEMENT, L.L.C.,** | § | |
| **6427 BROADWAY, L.L.C., 6955** | § | |
| **ALMEDA, L.L.C., LF HOLDINGS, L.L.C.,** | § | |
| **B L INDUSTRIAL, L.L.C., 1105** | § | |
| **BAYAREA, L.L.C., AVONDALE** | § | |
| **DEVELOPMENT, L.L.C., 6611 N.** | § | |
| **SHEPHARD, L.L.C., ST. JOSEPH** | § | |
| **MEDICAL PLAZA, L.L.C., 16676** | § | |
| **NORTHCHASE, L.L.C., LATIF** | § | |
| **INVESTMENTS, LTD., 1520 SOUTH LOOP,** | § | |
| **L.L.C., 7206 MCHARD, L.L.C., GP-PINE** | § | |
| **TERRACE, L.L.C., TEXAS FUELING** | § | |
| **SERVICES, L.L.C., GSS CAPITAL, L.L.C.,** | § | |
| **5231 BRYANT IRVIN, L.L.C., TIKVA** | § | |
| **INVESTMENTS, L.L.C.,** | § | |
| **JERICO AUTO TOWING, L.L.C., 3400** | § | |
| **MONTROSE INVESTORS HOLDINGS,** | § | |
| **L.L.C., & MOONVIEW PROPERTIES, L.L.C.** | § | |
| **Defendants.** | § | |

### PLAINTIFFS' ORIGINAL PETITION, REQUEST FOR DISCLOSURE & APPLICATION FOR INJUNCTIVE RELIEF

Plaintiffs, Mokaram Latif West Loop, LP, Mokaram-Latif General, L.L.C. and Ali

Choudhri, file this original petition, request for disclosure and application for injunctive relief

against Defendants, Osama Abdullatif, Safya Abdullatif, Danny M. Sheena, Jay Shanaq,

Unofficial Copy Office of Chris Daniel District Clerk

M.D., Ronnie Sheena, Abdullatif & Co, L.L.C., Astrodome Auto Sales, Inc., Safya, L.L.C., SLS Aim, L.L.C., SLS Properties, L.L.C., SLS Houston Properties, L.L.C., SLS-South Loop, L.L.C., SLS Building Management, L.L.C., 6427 Broadway, L.L.C., 6955 Almeda, L.L.C., Lf Holdings, L.L.C., B L Industrial, L.L.C., 1105 Bayarea, L.L.C., Avondale Development, L.L.C., 6611 N. Shephard, L.L.C., St. Joseph Medical Plaza, L.L.C., 16676 Northchase, L.L.C., Latif Investments, Ltd., 1520 South Loop, L.L.C., 7206 McHard, L.L.C., Gp-Pine Terrace, L.L.C., Texas Fueling Services, L.L.C., GSS Capital, L.L.C., 5231 Bryant Irvin, L.L.C., TIKVA Investments, L.L.C., Jerico Auto Towing, L.L.C. 3400 Montrose Investors Holdings, L.L.C., and Moonview Properties, L.L.C., and would show as follows:

## DISCOVERY PLAN

1.      Plaintiffs affirmatively plead that they seek monetary relief in excess of $1,000,000 and pleads that discovery should be conducted in accordance with a discovery control plan under Civil Procedure Rule 190.4.

## Claim for Relief

2.      Plaintiffs seek monetary relief over $1,000,000.

## PARTIES

3.      Plaintiff, Mokaram Latif West Loop, LP is a Texas limited partnership with its principal place of business in Harris County, Texas.

4.      Plaintiff, Mokaram-Latif General, L.L.C. is a Texas limited liability company with its principal place of business in Harris County, Texas.

5.      Plaintiff, Ali Choudhri, is an individual resident of Harris County, Texas.

6.      Defendant, Osama Abdullatif, is an individual residing in Harris County, Texas and may be served with process at his residence address of at 5417 Valerie St., Bellaire, Texas

77401, his business address of 2500 West Loop South, Suite 450, Houston, Texas 77027, or wherever he may be found.

7.      Defendant, Safya Abdullatif, is an individual residing in Harris County, Texas and may be served with process at her residence address of at 5417 Valerie St., Bellaire, Texas 77401, or wherever she may be found.

8.      Defendant, Danny M. Sheena, is an individual residing in Harris County, Texas and may be served with process at his usual place of business, The Sheena Law Firm, 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

9.      Defendant, Jay Shanaq, M.D., is an individual residing in Harris County, Texas and may be served with process at his residence address of 11309 Smithdale Rd, Houston, Texas, 77024, or wherever he may be found.

10.     Defendant, Ronnie Sheena, is an individual residing in Harris County, Texas and may be served with process at his office address of 4543 Post Oak Place Drive, Suite 105, Houston, Texas, 77024, or wherever he may be found.

11.     Defendant, Abdullatif & Co., L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

12.     Defendant, Astrodome Auto Sales, Inc., is a Texas corporation and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 4401 W. 18th Street, Houston, Texas 77092, or wherever he may be found.

13.     Defendant Safya, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

14.     Defendant, SLS AIM, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office of 1001 Texas Avenue, Ste. 240, Houston, Texas 77002, or wherever he may be found.

15.     Defendant, SLS Properties, is a Texas general partnership and may be served with process by and through its general partner, Osama Abdullatif, at his residence address of at 5417 Valerie St., Bellaire, Texas 77401, his business address of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

16.     Defendant, SLS Houston Properties, L.L.C. is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

17.     Defendant, SLS-South Loop, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office of 1001 Texas Avenue, Ste. 240, Houston, Texas 77002, or wherever he may be found.

18.     Defendant, SLS Building Management, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

19.     Defendant, 6427 Broadway, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

20.     Defendant, 6955 Almeda, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

21.     Defendant, LF Holdings, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

22.     Defendant, BL Industrial, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

23.     Defendant, 1105 BayArea, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 500, Houston, Texas 77004, or wherever he may be found.

24.     Defendant, Avondale Development, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

25.     Defendant, 6611 N. Shephard, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

26.     Defendant, St. Joseph Medical Plaza, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 2500 W Loop South, Suite 522, Houston, TX 7027, or wherever he may be found.

27.     Defendant, 16676 Northchase, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 2500 W Loop South, Suite 522, Houston, TX 7027, or wherever he may be found.

28.     Defendant, Latif Investments, Ltd, is a Texas limited partnership and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 2500 W Loop South, Suite 522, Houston, TX 7027, or wherever he may be found.

29.     Defendant, 1520 South Loop W., L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 400, Houston, Texas 77004, or wherever he may be found.

30.     Defendant, 7206 McHard, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Osama Abdullatif, at his registered office of 5445 Almeda Rd., Suite 500, Houston, Texas 77004, or wherever he may be found.

31.     Defendant, GP-Pine Terrace, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

32.     Defendant, Texas Fueling Services, Inc. is a Texas corporation and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

33.     Defendant, GSS Capital, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

34.     Defendant, 5231 Bryant Irvin, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 2500 West Loop South, Suite 518, Houston, Texas 77027, or wherever he may be found.

35.     Defendant, TIKVA Investments, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 4612 Oleander St. Bellaire, Texas 77401, or wherever he may be found.

36.     Defendant, Jerico Auto Towing, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 4612 Oleander St. Bellaire, Texas 77401, or wherever he may be found.

37.     Defendant, 3400 Montrose Investors Holdings, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena,

at his registered office address of 4612 Oleander St. Bellaire, Texas 77401, or wherever he may be found.

38.     Defendant, Moonview Properties, L.L.C., is a Texas limited liability company and may be served with process by and through its registered agent, Danny M. Sheena, at his registered office address of 4612 Oleander St. Bellaire, Texas 77401, or wherever he may be found.

### Background Facts

39.     Plaintiff, Ali Choudhri ("Choudhri") Choudhri became a 50% owner and a manager of Mokaram-Latif General, L.L.C. ("General Partner"), the general partner of Mokaram Latif West Loop, Ltd. ("Limited Partnership"), as of October 29, 2010. Choudhri also became the owner of a 49.5% interest in the Limited Partnership on that date. Defendant, Osama Abdullatif ("Abdullatif"), was the other owner and the other manager of the General Partnership as of October 29, 2010.

40.     Abdullatif has been recently removed as a manager of the Limited Partnership, and his membership interests revoked, by action of the members and managers of the General Partner.  These actions were taking because Abdullatif had violated the terms of the General Partner and Limited Partner company agreements, stolen money from the entities, violated his fiduciary duty to the entities, engaged in self-dealing, signed "sweetheart" leases with his partners, friends and associates, allowed tenants to move into the Beal Bank Building without a valid lease, and failed and refused to collect the full amounts of lease payments from his partners, friends and associates. As such, Abdullatif no longer has any authority to act on behalf either the Limited Partnership or the General Partner.

41.    Abdullatif has excluded Choudhri from exercising his rights as an owner and manager since the time Choudhri acquired his interests in the Limited Partnership and General partner. Furthermore, Abdullatif has acted in violation of both the terms of the Limited Partnership Agreement, the General Partner's Company Agreement, and Texas law, by, among other things, usurping control of the entities and syphoning off funds that rightfully belong to the entities.

Furthermore, Abdullatif employed violence in attempting to eject Choudhri from his rented premises at the Beal Bank Building and deny him his rightful position as a manager and member of the entities. More specifically, on May 2, 2012, Abdullatif entered the suite leased by Jetall Companies, Inc., Choudhri's company, accompanied by 12-15 men, in an attempt to intimidate Choudhri. The men shouted and threatened to shoot Choudhri and frightened his employees. At least one of these men accompanying Abdullatif was armed and displayed his pistol in a threatening manner to intimidate Choudhri and his employees.

42.    Abdullatif testified in a prior suit on November 17, 2016 that he has taken at least $290,000 from the Partnership bank account and paid it to himself, which Plaintiffs would show constitutes theft, misappropriation and/or embezzlement of funds from the Limited Partnership. The Partnership Agreement and the General Partner's Company Agreements both expressly forbid paying any partner, manager or member any such fees. Abdullatif has testified that, he not only has been taking money from the Partnership to pay himself management fees ($5,000 per month) since December 2012, but also that he intends to continue taking money from the Partnership to pay himself management fees for the foreseeable future. Abdullatif has also paid his personal lawyers from Partnership funds and has allowed his other business interests and his personal lawyers to lease space at the Partnership's sole asset—an office building at the corner of

Westheimer and the West Loop (in the heart of the Galleria)—at below market rents, and/or has not charged those "insider" tenants pursuant to the terms of their respective leases. Furthermore, Abdullatif took monies from the Limited Partnership and/or General Partner and used those properties to buy other properties and create or support other businesses, in which Plaintiffs claim an interest.

43.     Additionally, Choudhri and Abdullatif entered into a Rule 11 Agreement in Cause No. 2012-27197 that prohibited paying or incurring any expenditure outside the ordinary course of business without seeking the prior written approval of the special master, the Hon. Scott Link. Abdullatif has admitted he took money and has asserted that—even if doing so were a violation of the corporate documents—his actions do not violate the Rule 11 Agreement or a related court order because those documents do not expressly forbid him from violating the corporate documents.

44.     Danny M. Sheena is Abdullatif's business partner and attorney and has assisted Abdullatif in his looting of the General Partner and Limited Partnership. Ronnie Sheena is Abdullatif's business partner and has assisted Abdullatif in his looting of the General Partner and Limited Partnership.  Safya Abdullatif is Abdullatif's wife and has also assisted him in the looting of the General Partner and Limited Partnership. Jay Shanaq, M.D. is a tenant of the Beal Bank Building, 2500 West Loop South, Houston, Texas 77027 who is the beneficiary of a "sweetheart" lease at below-market rates that was give him by Abdullatif.

### Causes of Action

### Breach of Contract

45.     Choudhri, would show that he and Abdullatif are parties to valid written agreements as described above. Abdullatif has breached those agreements and Choudhri has

sustained damages from those breaches in an amount within the jurisdictional limits of this Court. Choudhri accordingly seeks to recover those damages in this suit.

### Promissory Estoppel

46.     Choudhri would show that Abdullatif made a promise or promises to Choudhri, that Plaintiff's reliance on such promise was foreseeable and Plaintiff detrimentally relied on such promise to his injury. Plaintiff accordingly seeks to recover damages from Abdullatif for such detrimental reliance in this suit.

### Constructive Fraud

47.     Plaintiffs would show that Abdullatif has a legal or equitable duty to Plaintiffs that Abdullatif breached, acting as a constructive fraud against Plaintiffs. Plaintiffs accordingly seek to recover his damages for such constructive fraud in this suit.

### Constructive Trust

48.     Plaintiffs would show that Abdullatif breached a special trust, had a fiduciary relationship, or committed actual fraud against Plaintiffs, and was unjustly enriched as a result. Plaintiffs therefore ask the Court to impose a constructive trust on the Beal Bank Building, located at 2500 West Loop South, Houston, Texas 77027, and all income from that building since October 29, 2010.

### Resulting Trust

49.     Plaintiffs claim a resulting trust in any and all properties purchased by Abdullatif with funds taken from the Limited Partnership and/or the General Partner.

### Money Had & Received/ Assumpsit

50.     Plaintiffs would show that Abdullatif holds money which in equity and good conscience belongs to Plaintiffs, and that Abdullatif will be unjustly enriched if Abdullatif

retains the money. Plaintiffs therefore seek to recover said money under the equitable theory of assumpsit.

### Breach of Fiduciary Duty

51.     Abdullatif owes a fiduciary duty to the Limited Partnership and the General Partner.  Abdullatif has breached that fiduciary duty by self-dealing and by taking monies that rightfully belong to the General Partner and Limited Partnership for his own benefit.

### Conspiracy / Aiding & Abbetting

52.     Defendants, Safya Abdullatif and Danny M. Sheena and the various entities, have conspired with Abdullatif to violate his fiduciary duty to the Limited Partnership and the General Partner and have aided and abetted Abdullatif in such violation of his fiduciary duties. Accordingly, Plaintiffs seek to recover from Abdullatif, Safya Abdullatif and Danny M. Sheena for conspiracy and aiding and abetting in an amount within the jurisdictional limits of this Court.

### Request for an Equitable Accounting

53.     Plaintiffs hereby seek a complete equitable accounting of the books and records of the Limited Partnership and General Partner. Plaintiffs would show that the facts and accounts presented are so complex adequate relief may not be obtained at law because Abdullatif has secreted and/or altered the books of the Limited Partnership and the General Partner.

### Declaratory Judgment

54.     Plaintiffs seek a declaratory judgment that Abdullatif that:

    a.   Mr. Osama Abdullatif is not a member or manager of Mokaram-Latif General, L.L.C.

    b.   that Mr. Osama Abdullatif is no longer a Member of the Company;

    c.   that Mr. Osama Abdullatif is no longer a Manager of the Company;

d.   that, effective immediately, Mr. Osama Abdullatif shall no longer serve as the Company's registered agent and the Company is authorized to file all appropriate papers with the proper authorities, including, without limitation, the Secretary of State of the State of Texas, designating another registered agent for the Company;

e.   that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to transact any business in the name of the Company;

f.   that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to transact any business in the name of the Company;

g.   that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to act in the name of the Company;

h.   that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to act in the name of the Company;

i.   that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to the use of the name of the Company;

j.   that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to the use of the name of the Company;

k.   that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to bind the Company;

l.   that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to bind the Company;

m.   that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to sign any leases or other contracts on behalf of the Company;

n.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to sign any leases or other contracts on behalf of the Company;

o.  that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to negotiate any leases or other contracts on behalf of the Company;

p.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to negotiate any leases or other contracts on behalf of the Company;

q.  that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to make any withdrawals, including, without limitation, writing checks, initiating any wire, ACH, or other electronic-fund transfers, from any account of any banking or other financial institution on behalf of the Company;

r.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to make any withdrawals, including, without limitation, writing checks, initiating any wire, ACH, or other electronic-fund transfers, from any account of any banking or other financial institution on behalf of the Company;

s.  that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to make any loans or incur any other obligations in the name of the Company;

t.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to make any loans or incur any other obligations in the name of the Company;

u.  that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to approve any build-outs for any past, present or future lessees of the Beal Bank Building;

v.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to approve any build-outs for any past, present or future lessees of the Beal Bank Building;

w.  that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to allow any lessee into the Beal Bank Building unless that lessee has a signed lease which (a) was signed before the date of this Resolution and (b) is in effect as of the date of this Resolution;

x.  that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to allow any lessee into the Beal Bank Building unless that lessee has a signed lease which (a) was signed before the date of this Resolution and (b) is in effect as of the date of this Resolution;

y.  that Mr. Osama Abdullatif shall have no actual authority to charge for, or collect, a management fee for managing the Beal Bank Building;

z.  that Mr. Osama Abdullatif shall have no apparent authority to charge for, or collect, a management fee for managing the Beal Bank Building.

**Enforce of Confidentiality Agreement**

55.  Additionally, Plaintiffs seek to enforce the confidentiality provisions of the Company Agreement of the General Partner, which authorizes enforcement of those confidentiality provisions by specific enforcement.

### Request For Temporary & Permanent Injunction

56.     In light of the above described facts, Plaintiff seeks recovery from Defendants for damages and for injunctive relief as set forward below.

57.     Plaintiffs are likely to succeed on the merits of this lawsuit because they have evidence to establish the elements of their causes of action of breach of contract, promissory estoppel, breach of fiduciary duty, constructive fraud, constructive trust, resulting trust, money had and received and declaratory judgment, as set forth above.  Furthermore, Plaintiffs are not required to show that they will prevail at trial, but only put forth some evidence on their claims that tend to support their causes of action.  *See*, e.g., *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).  Plaintiffs can carry that burden at a hearing on a temporary injunction.

58.     Unless this Honorable Court restrains Defendant, Osama Abdullatif (including his employees, agents and persons acting in concert with him) during the pendency of this suit, Plaintiffs will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiffs complete, final and equal relief.  More specifically, Plaintiffs will show the court the following:

59.     The harm to Plaintiff is imminent because Abdullatif controls the bank accounts and other documents of the General Partner and the Limited Partnership;

60.     This imminent harm will cause Plaintiff irreparable injury in that Plaintiffs will be robbed of his interests in General Partner and the Limited Partnership ; and

61.     There is no adequate remedy at law which will give Plaintiff complete, final and equal relief because Abdullatif can and will empty the bank accounts of General Partner and the Limited Partnership, commit waste and destroy the companies.

*Plaintiff's Original Petition, Request for*
*Disclosure & Application for Injunctive Relief*                                    **Page 16**

62. Accordingly Plaintiffs ask the Court to enjoin Defendant, Osama Abdullatif, his employees, agents and persons acting in concert with him, from the following acts:

a. Taking money for lease payments at the Beal Bank Building;

b. Signing leases for the Beal Bank Building;

c. Taking "build out" money for the Beal Bank Building;

d. Allowing any tenant to occupy space at the Beal Bank Building without a valid lease;

e. Taking or withdrawing money from any bank account of the General Partner or Limited Partnership;

f. Holding himself out as a member or manager of the General Partner or Limited Partnership;

g. Filing any document with the Texas Secretary of State on behalf of the General Partner or Limited Partnership;

h. Hiring any lawyer or law firm to represent the the General Partner or Limited Partnership; and

i. Using any funds of the General Partner or Limited Partnership to pay any attorney.

**Exemplary Damages**

63. Plaintiffs seek to recover punitive/exemplary damages because Defendants' actions constituted fraud, malice or gross negligence as defined in Chapter 42 of the Texas Civil Practice & Remedies Code.

**Attorney's Fees**

64.     Plaintiffs have retained the undersigned attorney to recover their damages and seek to recover their reasonable attorney's fees as provided by Chapter 38 of the Texas Civil Practice & Remedies Code and/or the agreements between the parties.

**Jury Demand**

65.     Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

**Conditions Precedent**

66.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

**Request For Disclosure**

67.     Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

**Prayer**

For these reasons, Plaintiffs ask that the Court to issue citations for Defendants to appear and answer, and that Plaintiffs be awarded a judgment against Defendants for the following:

a.      Actual damages;

b.      Exemplary damages;

b.      Prejudgment and post-judgment interest;

c.      Court costs;

d.      Attorney fees; and

e.      All other relief to which Plaintiff is entitled.

Respectfully submitted,

**THE KELLEY LAW FIRM**

By:   **LLOYD E. KELLEY, Lead Counsel**
      **State Bar No. 11203180**
      2726 Bissonnet Ste 240 PMB 12
      Houston, Texas 77005
      Telephone: 281-492-7766
      Telecopier: 281-652-5973

      *Counsel for Plaintiff,*
      *Ali Choudhri, Individually*

**The King Law Firm**

By: /s/ Lee Keller King
      **Lee Keller King**
      Leekellerking@gmail.com
      Texas Bar No. 00792016
      1001 West Loop South, Suite 700
      Houston, Texas 77027
      (713) 789-7654
      (832) 280-5448 fax
      *Counsel for Mokaram Latif West Loop, Ltd., &*
      *Mokaram-Latif General, L.L.C.*

Unofficial Copy Office of Chris Daniel District Clerk

# Action by Unanimous Written Consent of the Members of
## Mokaram-Latif General, L.L.C.,
## a Texas Limited Liability Company

On June 30, 2017, pursuant to section 6.05 of the Company Agreement of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company (the "Company"), I, Ali Choudhri, the only remaining Member of the Company, by unanimous written consent of the Members of the Company and without a Meeting, as authorized by section 8.05 of the Company Agreement, hereby remove Mr. Osama Abdullatif as a Manager of the Company.

Written Consent hereof has been given in accordance with the Texas Business Organizations Code (the "Code"), and any and all written notice required by the Code has been given.

Dated: <u>June 30, 2017</u>

_____ (signature)

Member's Name: <u>Ali Choudhri</u>

Unofficial Copy Office of Chris Daniel District Clerk

**EXHIBIT B**

# Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company

On June 30, 2017, pursuant to section 6.05 of the Company Agreement of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company (the "Company"), I, Ali Choudhri, the only remaining Member of the Company, by unanimous written consent of the Members of the Company and without a Meeting, as authorized by section 8.05 of the Company Agreement, hereby appoint Mr. Dward Darjean as a Manager of the Company, to fill the same and now vacant position of Manager of the Company, which heretofore vacant position was previously held by Mr. Osama Abdullatif.

Written Consent hereof has been given in accordance with the Texas Business Organizations Code (the "Code"), and any and all written notice required by the Code has been given.

Dated: June 30, 2017

_____ (signature)

Member's Name: Ali Choudhri

Unofficial Copy Office of Chris Daniel District Clerk

EXHIBIT C

# Action by Unanimous Written Consent of the Members of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company

On June 30, 2017, pursuant to section 6.05 of the Company Agreement of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company (the "Company"), I, Ali Choudhri, the only remaining Member of the Company, by unanimous written consent of the Members of the Company and without a Meeting, as authorized by section 8.05 of the Company Agreement, hereby appoint Mr. Bradley S. Parker to fill the new position of Manager of the Company.

I hereby also confirm and ratify myself, Ali Choudhri, as a Manager of the Company, continuously from October 10, 2010, to the present date, and confirm and ratify that I will continue to act as a Manager of the Company.

Written Consent hereof has been given in accordance with the Texas Business Organizations Code (the "Code"), and any and all written notice required by the Code has been given.

Dated: <u>June 30, 2017</u>

_____ (signature)

Member's Name: <u>Ali Choudhri</u>

**EXHIBIT D**

# Resolution of the Managers of
# Mokaram-Latif General, L.L.C.,
# a Texas Limited Liability Company

BE IT RESOLVED THAT, on June 30, 2017, pursuant to section 6.04 of the Company Agreement of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company (the "Company"), the Managers of the Company increased the number of Managers of the Company, from two (2) Managers to three (3) Managers.

Dated: June 30, 2017

_____ (signature)

Manager's Name: Ali Choudhri

_____ (signature)

Manager's Name: Dward Darjean

Unofficial Copy Office of Chris Daniel District Clerk

**EXHIBIT E**

# Resolution of the Managers of
# Mokaram-Latif General, L.L.C.,
# a Texas Limited Liability Company

BE IT RESOLVED THAT, at a Meeting of the Managers of Mokaram-Latif General, L.L.C., a Texas Limited Liability Company (the "Company"), on June 30, 2017, agreed and consented to the following:

1.      that Mr. Osama Abdullatif is no longer a Member of the Company;

2.      that Mr. Osama Abdullatif is no longer a Manager of the Company;

3.      that, effective immediately, Mr. Osama Abdullatif shall no longer serve as the Company's registered agent and the Company is authorized to file all appropriate papers with the proper authorities, including, without limitation, the Secretary of State of the State of Texas, designating another registered agent for the Company;

4.      that, effective immediately, the Company is authorized to file all other appropriate papers with the proper authorities, including, without limitation, the Secretary of State of the State of Texas, noting the change of Members for the Company;

5.      that, effective immediately, the Company is authorized to file all other appropriate papers with the proper authorities, including, without limitation, the Secretary of State of the State of Texas, noting the change of Managers for the Company;

6.      that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to transact any business in the name of the Company;

7.      that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to transact any business in the name of the Company;

8.      that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to transact any business in the name of the Company;

9.      that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to act in the name of the Company;

**EXHIBIT F**

10.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to act in the name of the Company;

11.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to act in the name of the Company;

12.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to the use of the name of the Company;

13.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to the use of the name of the Company;

14.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to the use of the name of the Company;

15.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to bind the Company;

16.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to bind the Company;

17.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to bind the Company;

18.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to sign any leases or other contracts on behalf of the Company;

19.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to sign any leases or other contracts on behalf of the Company;

20.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to sign any leases or other contracts on behalf of the Company;

21.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to negotiate any leases or other contracts on behalf of the Company;

22.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to negotiate any leases or other contracts on behalf of the Company;

23.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to negotiate any leases or other contracts on behalf of the Company;

24.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to make any withdrawals, including, without limitation, writing checks, initiating any wire, ACH, or other electronic-fund transfers, from any account of any banking or other financial institution on behalf of the Company;

25.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to make any withdrawals, including, without limitation, writing checks, initiating any wire, ACH, or other electronic-fund transfers, from any account of any banking or other financial institution on behalf of the Company;

26.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to make any withdrawals, including, without limitation, writing checks, initiating any wire, ACH, or other electronic-fund transfers, from any account of any banking or other financial institution on behalf of the Company;

27.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to make any loans or incur any other obligations in the name of the Company;

28.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to make any loans or incur any other obligations in the name of the Company;

29.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to make any loans or incur any other obligations in the name of the Company;

30.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to approve any build-outs for any past, present or future lessees of the Beal Bank Building;

31.     that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to approve any build-outs for any past, present or future lessees of the Beal Bank Building;

32.     that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to approve any build-outs for any past, present or future lessees of the Beal Bank Building;

33.     that, effective immediately, Mr. Osama Abdullatif shall have no actual authority to allow any lessee into the Beal Bank Building unless that lessee has a signed lease which (a) was signed before the date of this Resolution and (b) is in effect as of the date of this Resolution;

34.    that, effective immediately, Mr. Osama Abdullatif shall have no apparent authority to allow any lessee into the Beal Bank Building unless that lessee has a signed lease which (a) was signed before the date of this Resolution and (b) is in effect as of the date of this Resolution;

35.    that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to allow any lessee into the Beal Bank Building unless that lessee has a signed lease which (a) was signed before the date of this Resolution and (b) is in effect as of the date of this Resolution;

36.    that Mr. Osama Abdullatif shall have no actual authority to charge for, or collect, a management fee for managing the Beal Bank Building;

37.    that Mr. Osama Abdullatif shall have no apparent authority to charge for, or collect, a management fee for managing the Beal Bank Building;

38.    that the Company shall notify Mr. Osama Abdullatif that he has neither actual nor apparent authority to charge for, or collect, a management fee for managing the Beal Bank Building;

39.    that the Company shall notify Mr. Osama Abdullatif to immediately return all management fees paid by the Company to Mr. Osama Abdullatif or any d/b/a or affiliate of Mr. Osama Abdullatif;

40.    that the Company shall direct Mr. Osama Abdullatif to honor the Confidentiality Agreement contained in the Company Agreement for the Company;

41.    that the Company shall direct Mr. Osama Abdullatif to immediately turnover all confidential information belonging to the Company and instruct Mr. Osama Abdullatif that he is not authorized to maintain any such confidential information;

42.    that the Company shall direct Mr. Osama Abdullatif to inform the Managers of any prior violation of the Confidentiality Agreement, of which Mr. Osama Abdullatif is aware, contained in the Company Agreement for the Company;

43.    that the Company shall direct Mr. Osama Abdullatif to immediately turnover all of the Company's books and records and instruct Mr. Osama Abdullatif that he is not authorized to maintain a copy of any such books and records;

44.    that the Company shall direct Mr. Osama Abdullatif to immediately turnover all of the Company's leases, contracts and other instruments binding, or purporting to bind, the Company in any manner

whatsoever, and instruct Mr. Osama Abdullatif that he is not authorized to maintain a copy of any such leases, contracts or other instruments purporting to bind the Company in any manner whatsoever;

45.    that the Company shall direct Mr. Osama Abdullatif to immediately turnover all of the rental deposits held by, or on behalf of, the Company, for any past, present or future tenant of the Beal Bank Building, and to account for any rental deposits which are not on deposit with a bank or other financial institution in the name of the Company;

46.    that the Company shall direct Mr. Osama Abdullatif to immediately disclose the complete name of all banks, lenders and other financial institutions at which the Company has any account (including, without limitation, checking, savings, money-market, certificates of deposits, installment or revolving loans, or any other account), and to provide the complete address, account and routing numbers for any such accounts, as well as all records associated therewith;

47.    that the Company is authorized to sue Drinnon & Wright, PLLC, and/or Rodney Drinnon;

48.    that the Company is authorized to sue Mr. Osama Abdullatif;

49.    that the Company is authorized to sue all other individuals or entities who have acted in concert with Mr. Osama Abdullatif against the Company;

50.    that the Company is authorized to contract to hire an attorney to represent it in any and all litigation filed on behalf of, or against, the Company, and to pay such attorney a reasonable and necessary fee customary in the locale in which any such lawsuit is filed;

51.    that the Company shall notify all banks, lenders, and other financial institutions that, effective as of June 30, 2017, Mr. Osama Abdullatif shall have no actual authority to act in the name of, shall take no actions on behalf of, or shall have no actual authority to bind, the Company; and

52.    that the Company may change the name or names of anyone authorized to make any withdrawals, sign any checks, or transact any other business with a bank, lender or other financial institution, in the name of the Company.

[The remainder of this page intentionally left blank]

Dated: <u>June 30, 2017</u>

_____ (signature)
Manager's Name: <u>Ali Choudhri</u>

_____ (signature)
Manager's Name: <u>Dward Darjean</u>

_____ (signature)
Manager's Name: <u>Bradley S. Parker</u>

Unofficial Copy Office of Chris Daniel District Clerk

# Mokaram Latif West Loop, Ltd.

July 27, 2017

Dear Tenants:

Effective immediately, Osama Abdullatif and Latif & Company have been removed as building manager for the Beal Bank Building, 2500 West Loop South, Houston, Texas 77027. The new management company is Jetall Companies, Inc.

From this point onward, all rental payments are to be made through Jetall Companies, Inc., 2500 West Loop South, Suite 255, Houston, Texas 77027, and are to be made payable to Mokaram Latif West Loop, Ltd. Any payments made to the prior management company, or in another other fashion than given above, will not be effective and will not be credited to the tenant.

Very truly yours

Bradley S. Parker, Manager
Mokaram-Latif General, LLC,
General Partner of Mokaram Latif West Loop, Ltd.

2500 West Loop, Suite 255
Houston, TX 77027

713.789.7654
832.280.5448 fax

**EXHIBIT G**

## Sebastian Campos

| | |
|---|---|
| **From:** | Codina, Lori (DCA) <Lori_Codina@Justex.net> |
| **Sent:** | Friday, July 21, 2017 2:09 PM |
| **To:** | Rodney Drinnon; Kimberly M. Ayres |
| **Cc:** | Scott Funk; eileenoneill@warejackson.com; Jeff Joyce; Paul Simon; kelley@lloydekelley.com; Lee King; David Medina; James D. Pierce |
| **Subject:** | RE: Choudhri v Mokaram hearing |

Rcvd.  Thank you.

The hearing is set on August 8, 2017 at 3:30 pm (1.5 hours) here in the 190th Court.

Thank you.

Lori Codina
190th District Court Coordinator
201 Caroline, 12th Floor
Houston, TX 77002
(832) 927-2306

---

**From:** Rodney Drinnon [mailto:rdrinnon@mccathernlaw.com]
**Sent:** Friday, July 21, 2017 11:06 AM
**To:** Kimberly M. Ayres <kimberly@lloydekelley.com>; Codina, Lori (DCA) <Lori_Codina@Justex.net>
**Cc:** Scott Funk <sfunk@grayreed.com>; eileenoneill@warejackson.com; Jeff Joyce <jjoyce@jmlawyers.com>; Paul Simon <paul.simon@jetallcompanies.com>; kelley@lloydekelley.com; Lee King <lee.k@jetallcompanies.com>; David Medina <david.medina@chamberlainlaw.com>; James D. Pierce <jim@jamespierce.com>
**Subject:** RE: Choudhri v Mokaram hearing

Dear Lori:

The 4th is not available and the 8th is problematic.  I would prefer the suggested September dates because expert testimony will be required and discovery will likely be necessary (depositions) to conduct a proper hearing.  We simply do not know what Mr. Choudhri values the property at and should not be required to go into the hearing blind.  In addition, we have filed a Motion for Contempt and set it for submission on Monday, July 31.  If the Court issues a Show Cause Order, then the contempt hearing should proceed on the same day as the hearing on the supercedeas bond.

As Ms. Ayres has indicated, Eileen O'Neil has filed a manadamus with the Texas Supreme Court that may moot the issue.  Mr. Kelley has not insisted on a hearing on the bond issue since the appellate court ruled and his sudden urgency unwarranted.

Regards,

Rod Drinnon

**EXHIBIT H**

**From:** Kimberly M. Ayres [mailto:kimberly@lloydekelley.com]
**Sent:** Friday, July 21, 2017 10:50 AM
**To:** Lori Codina
**Cc:** Scott Funk; Rodney Drinnon; eileenoneill@warejackson.com; Jeff Joyce; Paul Simon; kelley@lloydekelley.com; Lee King; David Medina; James D. Pierce
**Subject:** Choudhri v Mokaram hearing

Lori,

Mr. Funk has indicated that any dates the Court supplied in its letter are acceptable. Likewise, Mr. Choudhri will have counsel available for any of those dates as well. Although Mr. Kelley sent communication to counsel for all parties, counsel for Abdullatif has not responded. Mr. Kelley is requesting either August 4th or August 8th because the Defendants have just filed a mandamus to the Texas Supreme Court and if briefing is requested he wants to be able to indicate to the Supreme Court that this bond issue was handled expeditiously. Thank you.

Kimberly M. Ayres
The Kelley Law Firm
P: 281-492-7766
C: 832-752-5999

*Message sent from a mobile device. Please excuse brevity and typos.*

7/28/2017 2:42:25 PM
Chris Daniel District Clerk
Harris County
Envelope No: 18504948
By: CUERO, NELSON
Filed: 7/28/2017 2:42:25 PM

CAUSE NO. _____

| | | |
|---|---|---|
| OSAMA ABDULLATIF | § | IN THE DISTRICT COURT OF |
| **Plaintiff,** | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| JETALL COMPANIES, INC.; | § | |
| ALI CHOUDHRI individually; | § | |
| BRADLEY S. PARKER, individually; | § | |
| and DWARD DARJEAN, Individually | § | |
| **Defendants.** | § | _____ JUDICIAL DISTRICT |

### ORDER ON APPLICTION FOR
### <u>TEMPORARY RESTRAINING ORDER OF OSAMA ABDULLATIF</u>

On this day came on to be heard the Application for Temporary Restraining Order filed by Plaintiff Osama Abdullatif (õAbdullatifö).

Plaintiff seeks a temporary restraining order enjoining and restraining Defendants Jetall Companies, Inc., Ali Choudhri, Dward Darjean, and Bradley S. Parker (collectively, õDefendantsö) from interfering in any way with the running of MLWL and MLGøs business, including but not limited to enjoining Defendants from (1) misrepresenting to third-parties, that Abdullatif is not a manager of MLG or MLWL (2) misrepresenting to third-parties, that Abdullatif is not a member of MLG or MLWL; (3) occupying any portion of the Property without the express consent of Abdullatif; (4) interfering with the rights and obligations afforded Abdullatif as set forth in the LCA and the LPA; (5) diverting funds to themselves that belong to MLWL or MLG; (6) informing tenants of the Property that rent or other payments should be paid to any of the Defendants, their affiliates, or companies that they own or control; (6) conducting or holding any meeting of members of MLG without the express consent of Abdullatif; (7) conducting or holding any meeting of the managers of MLG without the express consent of Abdullatif; (8) issuing any resolutions of the managers of MLG without the express consent of

Unofficial Copy Office of Chris Daniel District Clerk

Abdullatif; and (9) issuing any resolutions or actions on the behalf of the members of MLG without the express consent of Abdullatif – whose membership interest is fifty percent (50%).

From the facts set forth in the Application and based upon the Verification of Osama Abdullatif and in the Affidavit of Osama Abdullatif submitted with the Application, it clearly appears to the Court that the Plaintiff will likely be successful on the merits as to its claims against Defendants and that, unless the Court issues a temporary restraining order restraining and enjoining Defendants from committing any of the acts described above, such acts may, and probably will, be committed before a hearing can be had on the Plaintiff's application for temporary injunction.  Injunctive relief is sought for the purpose of maintaining the status quo.

Unless this Court immediately orders Defendants to cease interfering with the running of MLWL and MLG's business as more fully referenced above, the status quo will not be maintained and the operations of the property and the good will created for MLWL and MLG and their respective members and managers will be damaged.  Unless this Court immediately orders the Defendants to cease interfering with the ongoing operations and corporate structure of MLWL and MLG, Abdullatif's rights to appeal the Final Judgment in the 190th court case will be irreparably destroyed.  Unless this Court orders the Defendants to immediately cease attempting to unilaterally claim ownership and control of MLWL and MLG, Abdullatif's ownership rights in the entities will be irreparably damaged.  Unless this Court orders the Defendants to immediately cease communicating with MLWL tenants while misrepresenting that they are solely in control of the entity, MLWL and MLG's ability to maintain landlord-tenant relationships with its tenants will be irreparably damaged.  Such damages will be virtually impossible to measure.  Once the landlord-tenant relationship of MLWL and MLG and their respective tenants is gone it is virtually impossible to replace and impossible to measure.

Moreover, if the Defendants are permitted to carry on with their illegal and unilateral attempt to oust Abdullatif from MLWL and MLG, it will be impossible for Abdullatif to maintain his rights on appeal.  As such, Abdullatif has no adequate remedy at law and therefore seeks and is entitled to a temporary restraining order.

The Court finds that no other remedy will fully and adequately preserve the status quo and protect Plaintiff's rights.

For all of the foregoing reasons, the Court is of the opinion that Plaintiff is entitled to a temporary restraining order as stated above.

IT IS, THEREFORE, ORDERED that the District Clerk issue a temporary restraining order restraining and enjoining Defendants and their agents, servants, employees, representatives, and those in active concert or participation with Defendants from directly or indirectly doing any of the following from the date of entry of this Order and until and to the 14th day after the date of this Order or until further ordered by this Court:

> interfering in any way with the running of MLWL and MLG's business, including but not limited to enjoining Defendants from (1) misrepresenting to third-parties, that Abdullatif is not a manager of MLG or MLWL (2) misrepresenting to third-parties, that Abdullatif is not a member of MLG or MLWL; (3) occupying any portion of the Property without the express consent of Abdullatif; (4) interfering with the rights and obligations afforded Abdullatif as set forth in the LCA and the LPA; (5) diverting funds to themselves that belong to MLWL or MLG; (6) informing tenants of the Property that rent or other payments should be paid to any of the Defendants, their affiliates, or companies that they own or control; (6) conducting or holding any meeting of members of MLG without the express consent of Abdullatif; (7) conducting or holding any meeting of the managers of MLG without the express consent of Abdullatif; (8) issuing any resolutions of the managers of MLG without the express consent of Abdullatif; and (9) issuing any resolutions or actions on the behalf of the members of MLG without the express consent of Abdullatif – whose membership interest is fifty percent (50%).

IT IS FURTHER ORDERED that Plaintiff's Application for a Temporary Injunction pending final hearing herein be, and the same is hereby, set for hearing on _____, 2017, at _____ a.m./p.m. in the Courtroom of the _____Judicial District Court, Harris County, Texas.

This Order shall not be effective unless and until Plaintiff either (i) executes and files with the District Clerk a bond executed by them in the sum of $_____ conditioned as required by law or (ii) deposit cash in such amount into the registry of the Court to wait the further Order of this Court.

Signed this _____ day of _____, 2017.

_____
JUDGE PRESIDING